O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL TRUJILLO,<br><br>  Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>  Defendant. | Case No. EDCV 08-1930-OP<br><br>MEMORANDUM OPINION; ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /
/ / /
/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly developed the record, as ordered by the Appeals Council Order;
2. Whether the ALJ properly considered certain treating and consultative opinions;[3] and
3. Whether the ALJ properly considered Plaintiff's obesity.

(JS at 3.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

---

[3] The Court combines Plaintiff's second and third contentions into one discussion. (JS at 3.)

# III.

# DISCUSSION

**A.     The ALJ Fully and Fairly Developed the Record.**

Plaintiff contends that the ALJ failed to properly develop the record by failing to comply with the Appeals Council order to seek clarification regarding Dr. Rose Colonna's psychiatric evaluation. (JS at 3-8.) The Court disagrees.

**1.     Applicable Law.**

The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel. Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); see also Tonapetyan v. Halter, 242 F.3d, 1144, 1150 (9th Cir. 2001); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). The duty is heightened when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests. Celaya, 332 F.3d at 1183; Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir.1992); see also Burch v. Barnhart, 400 F.3d 676, 682-83 (9th Cir. 2005) (distinguishing Burch from Celaya at least in part, based on the fact that the plaintiff in Burch was represented by counsel). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." See Tonapetyan, 242 F.3d at 1150.

**2.     Analysis.**

On September 17, 2005, the Appeals Council remanded the previous decision and stated:

> The record includes a January 2005 psychological evaluation. Dr. Colonna reported in connection with that evaluation that the claimant achieved a Verbal IQ score of 65, a Performance IQ score of 91 and a Full Scale IQ score of 88, and that the test results were valid. However, she did not diagnose mental retardation or borderline intellectual

>functioning (based on the Full Scale IQ score of 65), or discuss that score at all.  If necessary, the Administrative Law Judge will recontact the doctor to clarify the situation.

(Administrative Record ("AR") at 100.)  Notably, the Appeals Council mistakenly stated "a Full Scale IQ score of 65." Dr. Rose Colonna's psychiatric evaluation indicated a Full Scale IQ score of 88. (Id. at 340.)[4] Nevertheless, Dr. Colonna opined, "Given the test results and clinical data, the claimant is functioning in low average range of intellectual ability." (Id. at 341.)  Dr. Colonna also assessed Plaintiff with a Global Assessment of Functioning ("GAF")[5] score of 45, or "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." (AR at 342); DSM-IV at 34.

Contrary to Plaintiff's contention, the Appeals Council did not order the ALJ to contact Dr. Colonna, but rather gave the ALJ discretion to seek clarification. (AR at 98-101.)  In complying with the Appeals Council order, the ALJ relied upon the testimony of the medical expert to interpret Dr. Colonna's findings. (Id. at 24, 449-56.)  In the current decision, the ALJ stated:

>Dr. David Anderson testified as a psychiatric expert.  He concluded from the file that the claimant has an affective disorder with moderate difficulties maintaining concentration, persistence and pace, but otherwise only mild difficulties in performing activities of daily living

---

[4] On January 14, 2005, Dr. Colonna completed a consultative psychiatric evaluation on Plaintiff.  (AR at 338-42.)

[5] GAF scores reflect the "clinician's judgment of the individual's overall level of functioning . . . [including] psychological, social and occupational functioning" and are not meant to be a conclusive medical assessment of overall functioning, but rather, are only intended to be "useful in planning treatment[,] . . . measuring its impact, and in predicting outcome." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32-34 (American Psychiatric Ass'n ed., 4th ed. 2000).

and social interaction. Dr. Anderson specifically found that the GAF
score of 45 as determined by Dr. Rose Colonna in January 2005 was
inconsistent with the record.

(Id. at 24.) Thus, the ALJ properly relied on substantial evidence, i.e., the testimony of the medical expert, to discredit Dr. Colonna's inconsistent GAF finding.

Plaintiff mistakenly argues that the ALJ rejected Dr. Colonna's testimony completely. (JS at 3-8, 10-11.) The ALJ only rejected Dr. Colonna's inconsistent GAF finding and other similar observations indicating serious social, occupational, or school functioning. (AR at 24.) In her opinion, Dr. Colonna opined that Plaintiff could perform at least simple, unskilled work, which was consistent with the ALJ's residual functional capacity ("RFC") assessment). (Id. at 26, 342.)[6]

Additionally, the ALJ relied upon the subsequent psychiatric examination performed by Dr. Steven Brawer to determine the extent, if any, of Plaintiff's mental impairments.[7] (Id. at 22, 24, 375-81.) The ALJ stated:

At the claimant's request, he was sent out for psychological testing
which showed only mild functional limitations. It is noted that the

---

[6] The ALJ provided the following RFC assessment:
[T]he claimant has the residual functional capacity to perform light work with a preclusion from kneeling and crawling, a limitation to occasional crouching and occasional pushing, pulling and reaching overhead with the left upper extremity, an avoidance of hazards and pulmonary irritants and moderate limitations in the ability to understand, remember and carry out detailed work instructions, maintain concentration and attention for extended periods of time, interact appropriately with the general public and get along with coworkers or peers.
(AR at 26.)

[7] On December 3, 2007, Dr. Brawer completed a psychological evaluation on Plaintiff. (AR at 375-81.)

5

>claimant has never had treatment from any mental health provider, only having taken psychotropic medications prescribed by the family physician.

(Id. at 24, 449-56.) The record supports the ALJ's finding. Similar to Dr. Colonna, Dr. Brawer concluded that Plaintiff had a "Full Scale IQ score of 89." (Id. at 340, 379.) This IQ score would, as Dr. Colonna also opined, "place the patient in the Low Average Range of general intelligence." (Id. at 341, 379.) Like Dr. Colonna, Dr. Brawer concluded that Plaintiff could perform at least simple, repetitive tasks. (Id. at 342, 380.) The ALJ relied upon Dr. Brawer's opinion, and implicitly Dr. Colonna's opinion, to assess Plaintiff's RFC. (Id. at 26.)

Accordingly, the record contains no ambiguous or inadequate evidence regarding Dr. Colonna's opinion, as the ALJ relied upon the opinion of the medical expert to partially reject the inconsistent GAF score. Additionally, the ALJ relied on a subsequent examination, similar to Dr. Colonna's opinion, to assess Plaintiff's RFC. As a result, the ALJ's duty to develop the record as to ambiguous evidence is not triggered. See Tonapetyan, 242 F.3d at 1150; see also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Moreover, the record was adequate for the ALJ to interpret Dr. Colonna's opinion, as the ALJ relied upon the medical expert testimony and a subsequent psychological evaluation for further clarification. (AR at 22-26.) Thus, Plaintiff fails to explain how the medical record was ambiguous or inadequate regarding Dr. Colonna's opinion. See Mayes, 276 F.3d at 458 (citing 42 U.S.C. § 423(d)(5) (Supp. 2001) and Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990)) (plaintiff has a duty to prove that she is disabled).

Based on the foregoing, the Court finds that the ALJ fully and fairly developed the record with respect to Plaintiff's alleged mental impairments. Thus, there was no error.

///

B. **The ALJ Properly Considered the Opinions of the Consultative and Treating Sources.**

Plaintiff contends the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to reject the findings of consultative physician, Dr. Colonna, and treating physician, Dr. Hector Flores. (JS at 10-11, 13-17.)

    1. **Applicable Law.**

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). A treating or examining physician's opinion based on the plaintiff's own

complaints may be disregarded if the plaintiff's complaints have been properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

**2.     The Opinion of Dr. Colonna.**

Plaintiff argues the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to reject the opinion of Dr. Colonna. (JS at 10-11.) The Court disagrees.

As stated above, the ALJ relied on medical expert testimony to partially reject Dr. Colonna's opinion as to Plaintiff's GAF score. See supra, Discussion Part III.A.2; see also Thomas, 278 F.3d at 957; Matney, 981 F.2d at 1019. To the extent that Plaintiff argues the ALJ reject all of Dr. Colonna's findings, that contention is without merit. The ALJ relied upon a subsequent psychological evaluation, consistent with Dr. Colonna's opinion, to assess Plaintiff's RFC. See supra, Discussion Part III.A.2. Thus, the ALJ provided specific and legitimate reasons, based upon substantial evidence, to partially reject Dr. Colonna's opinion.

**3.     The Opinion of Dr. Flores.**

Plaintiff next contends that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to reject the findings of Dr. Flores. (JS at 16-17.) The Court disagrees.

On September 14, 2007, Dr. Flores completed a physical RFC questionnaire. (AR at 367-71.) In the questionnaire, Dr. Flores diagnosed

Plaintiff with diabetes mellitus, hypertension, left shoulder impingement syndrome, right knee degenerative joint disease, and major depression. (Id. at 367.) He indicated Plaintiff's prognosis was "fair." (Id.) Based on the severity of Plaintiff's pain, Dr. Flores opined that Plaintiff cannot lift more than fifteen pounds and was precluded from a full range of motion in his left shoulder. (Id.) Dr. Flores also opined that Plaintiff is unable to climb stairs, squat, or stand for a prolonged period due to pain in his right knee. (Id.) Dr. Flores opined Plaintiff's functional limitations as follows: (i) Plaintiff can walk one block without rest; (ii) Plaintiff can continuously sit for thirty minutes and stand for ten minutes; (iii) Plaintiff can stand or walk for about two hours, and sit for about four hours, in an eight-hour workday with normal breaks; (iv) Plaintiff requires a job which permits shifting at will from sitting, standing, and walking; (v) Plaintiff will need to take unscheduled breaks for about twenty minutes during an eight-hour workday; (vi) Plaintiff can occasionally lift ten pounds or less, and can never lift twenty pounds or more; (vii) Plaintiff is unable to reach out with his left arm at a full extension; (viii) Plaintiff has limitations with grasping, turning, twisting, fine manipulation, reaching, and overhead reaching; and (ix) Plaintiff requires the use of an assistive device for ambulation. (Id. at 367-71.) Dr. Flores also concluded that Plaintiff would be absent from work at least three days per month due to his impairments or treatment. (Id. at 371.)

Here, the ALJ rejected Dr. Flores' opinion as follows:

> I do not give weight to the unsupported assertions Dr. Flores makes in the disability form. I give greater weight to the treatment notes that the doctors made at the time claimant was examined and that were created for the sole purpose of making an official record of the claimant's medical condition, treatment, and response to treatment, than I give weight to a disability form that was completed solely for the purpose of qualifying the claimant for benefits, and which is inconsistent with those

> treatment notes and the claimant's actual daily functioning. I also give weight to the objective findings and observed functional limitations from the consultative examiners. I do not give weight to any assessment that relies solely on the claimant's subjective complaints and self assessed functional limitations because the claimant's complaints and statements are not credible. Thus, Dr. Flores' recordation and repetition of the claimant's subjective assertions and contentions in the disability form, in the absence of corroborative medical findings, is not an independent, well supported medical evaluation and assessment of the claimant's condition and functional abilities.

(Id. at 23.)

The record supports the ALJ's contention, as Dr. Flores' treatment notes do not validate the above functional limitations. (AR at 217-23, 271-332, 343-55, 367-71.) For example, in June 2001, Dr. Flores noted that Plaintiff suffered from mild left shoulder pain but was able to perform normal activities. (Id. at 287, 331.) On July 9, 2001, Dr. Flores noted that Plaintiff had a full range of motion in his left shoulder. (Id. at 286, 330.) On April 27, 2006, Dr. Flores reported that Plaintiff's knee condition was stable. (Id. at 347.) On July 14, 2006, Dr. Flores stated that Plaintiff had an improved range of motion in his left shoulder. Thus, the ALJ rejected the opinion of Dr. Flores, as it was inadequately supported by the doctor's treatment records. Thomas, 278 F.3d at 957; see also Matney, 981 F.2d at 1019.

Moreover, Dr. Flores's findings are largely based upon Plaintiff's subjective complaints, which the ALJ properly discounted.[8] (AR at 26-28.) As a result, the ALJ properly rejected Dr. Flores' opinion. Morgan, 169 F.3d at 602; see also Sandgathe, 108 F.3d at 980; Andrews, 53 F.3d at 1043. The ALJ also relied upon

---

[8] Plaintiff does not contest the ALJ's credibility finding. Thus, the Court declines to discuss this issue.

the opinions of the consultative examiners, whose findings were supported by independent clinical evidence, to reject the opinion of Dr. Flores.[9]  (AR at 22-24, 356-66, 375-87); see also Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller, 770 F.2d at 849.

Based upon the foregoing, the Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, to properly reject Dr. Flores' opinion.  Thus, there was no error.[10]

**C.    Reversal Is Not Warranted Based on the ALJ's Alleged Error with Respect to His Failure to Consider Plaintiff's Obesity.**

Plaintiff's final contention is that the ALJ should have taken into account Plaintiff's obesity in arriving at the decision.  (JS at 20-23.)  Plaintiff bases his contention on the opinion of Dr. Flores, who indicated that Plaintiff's chronic knee pain worsened from weight gain.  (Id. at 21; AR at 344.)  Plaintiff also argues that he suffered from hypertension, which was exacerbated by his obesity.  (JS at 21.)

---

[9]  Plaintiff does not contest the validity of the consultative examiners' opinions.  Thus, the Court declines to elaborate on the individual findings of the consultative examiners.

[10]  Plaintiff also argues that the ALJ failed to properly develop the record as to Dr. Flores' opinion.  However, the record contains no ambiguous or inadequate evidence regarding Dr. Flores' opinion, as the ALJ reviewed and summarized Dr. Flores' treatment records and related findings.  (AR at 22-24.)  Plaintiff fails to identify how the record was ambiguous or inadequate regarding Dr. Flores' opinion.  See Mayes, 276 F.3d at 458 (citing 42 U.S.C. § 423(d)(5) (Supp. 2001) and Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990)) (plaintiff has a duty to prove that she is disabled).  As a result, the ALJ's duty to develop the record as to ambiguous or inadequate evidence is not triggered.  See Tonapetyan, 242 F.3d at 1150; see also Mayes, 276 F.3d at 459-60.  Additionally, the record was adequate for the ALJ to determine Plaintiff's RFC, as the ALJ relied upon the findings of consultative examiners, the medical expert's opinion, and Plaintiff's testimony and statements regarding his daily activities.  (AR at 22-26.)  Thus, there was no error.

11

The Court disagrees.

Generally, where there is evidence of obesity, the ALJ must determine the effect of the plaintiff's obesity upon his other impairments, his ability to work, and his general health. See, e.g., Celaya v. Halter, 332 F.3d at 1181; see also SSR 02-01p (requiring an ALJ to consider the effects of obesity at several points in the ALJ's evaluation). In Celaya, the Ninth Circuit held that it was error for an ALJ not to develop the record on an obesity condition when that condition was likely a partial basis for the claimant's disability, or could exacerbate her reported illnesses, and where the claimant had proceeded *pro se* and likely never knew that "she *could* assert obesity as a partial basis for her disability." Celaya, 332 F.3d at 1183.

In Burch, the Ninth Circuit distinguished its holding in Celaya, reasoning that the ALJ had no duty to consider the represented plaintiff's obesity because there was no indication in the record that her obesity exacerbated her other impairments. Burch, 400 F.3d at 682. The court noted that there was no evidence before the ALJ, and none in the record, indicating that Burch's obesity limited her functioning; there were no treatment notes or any diagnoses addressing her limitations due to obesity; the record was silent as to whether and how her obesity might have exacerbated her condition; Burch did not specify which listing she believed she would have met or equaled had her obesity been considered; and she did not present any testimony or other evidence at the hearing that her obesity impaired her ability to work. Id. at 682-83. Moreover, unlike the claimant in Celaya, Burch had been represented by counsel throughout the proceedings. Id. ("[m]ore significantly, Burch was represented by counsel.").

The facts in this case closely resemble those in Burch. Represented by counsel throughout the proceedings, Plaintiff presented no evidence that his obesity was disabling or that it exacerbated his hypertension or other severe impairments. See Burch, 400 F.3d at 682. While Dr. Flores indicated the

Plaintiff's knee pain worsened due to weight gain, Dr. Flores did not opine that Plaintiff suffered any functional limitations due to his obesity or even his greater knee pain. (AR at 344.) This is not enough for this Court to find error. See, e.g., Burch, 400 F.3d at 683 (holding that there was no reversible error in the ALJ's failure to consider the represented plaintiff's obesity where the only evidence in the record consisted of notes from doctors observing weight gain, indicating obesity, and recommending a medically supervised weight loss program). Nor does Plaintiff in this case set forth any evidence which would support the finding that Plaintiff's impairments met or equaled a Listing when obesity is included. Id. at 683 (plaintiff bears the burden of proving the impairment meets or equals the criteria of a listing; ALJ's failure to consider equivalence not error where claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing). Plaintiff cites to instances in the record indicating hypertension, but there are no instances of doctors opining that his hypertension was exacerbated due to his obesity or that he suffered any related functional limitations. (AR at 275, 277-85, 300, 311-12, 314-16, 318-28, 365.) As in Burch, there simply is no evidence in this record of any functional limitations as a result of Plaintiff's obesity that the ALJ should have, yet failed, to consider.

Accordingly, the Court finds there was no error in the ALJ's failure to address Plaintiff's obesity.

## IV.
## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: December 11, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge